POOLER v. SAMMET.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. MUNICIPAL CORPORATIONS (§ 663*)—STREETS—TITLE TO.

Title to the soil of the old Harlem road, laid out by the Dutch, and not merely easements therein, vested in the Dutch government, and thereafter passed to the British crown, and subsequently to New York City under the Dongan charter.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 663.*]

2. MUNICIPAL CORPORATIONS (§ 663*)—STREETS—ABANDONMENT—EFFECT.

Title to the old Harlem road having been in New York City, it did not revert to the abutting owners by mere abandonment of public use of the road and the closing thereof; such reversion requiring a conveyance from the city under legislative authority.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 663.*]

3. VENDOR AND PURCHASER (§ 130*)—CONTRACT TO CONVEY—MARKETABILITY OF TITLE.

Plaintiff claims land embracing part of the old Harlem road under a record title and possession by himself and predecessors for more than 50

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

years, they having paid taxes, etc., on such land as private property, though title was in the city when the road was abandoned, and does not appear to have been conveyed by it. Plaintiff's record title starts with one who owned land abutting on the road. *Held*, that the possibility of the city successfully asserting a claim to any interest in the land is insufficient to render the title unmarketable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246; Dec. Dig. § 130.*]

Appeal from Special Term, New York County.

Action by Louis J. Pooler against Joel Sammet. From a judgment dismissing the complaint (58 Misc. Rep. 469, 111 N. Y. Supp. 658), plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles A. Deshon, for appellant.

A. Stern, for respondent.

LAUGHLIN, J. This is an action by a vendor of real estate against the vendee to compel the specific performance of the contract. On the 4th day of May, 1906, the plaintiff and defendant made an agreement in writing by which plaintiff agreed to sell and convey to defendants lots Nos. 58, 60, 62, and 64 East 114th street for the consideration and on the terms therein specified. Each lot had a frontage of 25 feet on 114th street. The contract, by a subsequent mutual arrangement, has been fully consummated with respect to lots Nos. 62 and 64. The plaintiff duly tendered a deed of the other lots, but defendant declined to accept it upon the ground that the title to those lots was not marketable. With the exception of a triangular gore on the southeasterly end of the two lots taken as a whole, which extends less than half the length of the easterly line and does not extend the entire length of the southerly line, the premises in question are part of the bed of the old Harlem road. It is conceded that plaintiff tendered good title to that part of the premises which was part of the easterly half of the old Harlem road, and that part also which has already been described as a triangular gore. The controversy is over the remaining part of the premises, which consists of a triangular gore in the northwesterly corner of the premises, embracing nearly the entire frontage on 114th street and extending in depth on the westerly line about half the depth of the lot. All of this, the title to which is questioned, was formerly part of the westerly half of the old Harlem road.

It has been found as a fact that the old Harlem road, leading from McGowan's Pass to Harlem, was laid out by the Dutch during their occupation of Manhattan Island, prior to August, 1664, and that its use as a thoroughfare was abandoned, and it was closed, prior to 1850. The court found, as a conclusion of law, that when the old Harlem road was closed, the date of which, as has been seen, is stated to have been prior to 1850, but is not definitely fixed, title to the roadbed to the center thereof vested in the owners of the adjacent land, free from any public easement. If, on the closing of the road, the title to the roadbed vested in the abutting owners, the trial court was doubtless

right in finding that the title to this triangular gore became vested in Peter Poillon, who never conveyed the same, and that the deeds from his receiver and the assignee in bankruptcy of his estate did not convey a marketable title, and also that as against his heirs a marketable title by adverse possession was not clearly shown. We are of opinion, however, that the court erred in holding that, when the old Harlem road was closed, the roadbed to the center thereof vested in the owners of the adjacent land. The road having been laid out by the Dutch during their occupation of the island of Manhattan, the title, and not merely the necessary easements, vested in the Dutch government, and thereafter passed to the British crown, and subsequently to the city of New York by the Dongan charter. Dunham v. Williams, 37 N. Y. 251; Caminez v. Goodman, 119 App. Div. 484, 104 N. Y. Supp. 68. The title to the road having been in the city, it did not revert or pass to the abutting owners by the mere abandonment of the public use of the road and the closing thereof. That would have required a conveyance from the city pursuant to legislative authority, of which there is no evidence.

These views are not in conflict with the decision made by the court in Falvey v. Bridges, 61 Hun, 626, 15 N. Y. Supp. 878, affirmed 133 N. Y. 663, 31 N. E. 624. The observations of Mr. Justice Daniels in the opinion at General Term in that case were obiter dicta, and do not appear to have been concurred in by Mr. Justice Van Brunt, and no authority is cited to sustain the view expressed that if the city could not, on account of its ownership of the bed of the road, close up and discontinue the road, then the land reverted to the adjacent owners. It may be that in that case the adjacent owners had taken possession, and that the city had acquiesced therein, which in time would ripen into a good title. There does not appear to have been a formal discontinuance of the road, by which title would, under any statute of which we are aware, revert to the adjacent owner.

The undisputed facts tend to show that the plaintiff has good title by adverse possession. He and his grantors appear to have been in possession under a record title since the 9th day of June, 1851, when one Isaac Adriance, as executor, conveyed the premises in question and others to Henry F. Phinney. Adriance evidently claimed title under a deed given on the 9th day of September, 1843, by a master in chancery, on the foreclosure of a mortgage given by Archibald Watt and wife on the 14th day of May, 1838. Watt was the owner of the record title to a large tract of land bounding the old Harlem road on the west by lines running at right angles thereto; the northerly line intersecting the old Harlem road at the distance, as appears by a map, of something less than 50 feet southerly of the southerly line of 114th street as it now exists, and running northwesterly diagonally across what is now 114th street from a point east of Madison avenue on the southerly line of 114th street. His holdings did not embrace the record title to a small triangular gore abutting on the old Harlem road just south of the southerly line of 114th street and by her land, but they did embrace all of it with that exception, and he assumed to mortgage the entire frontage on Harlem road just south of 114th _____ _____ _____ding this triangular gore to which he did not

have the record title, and bounded the same on the old Harlem road; and, as already observed, when Adriance received title by this description and came to convey to Phinney, he conveyed expressly to the center of the road and included all of the land in question. Phinney conveyed the premises by the description contained in the deed to him, and by mesne conveyances by like descriptions a similar record title passed to James M. Mills on the 9th day, of September, 1859. It appears that the premises have ever since been taxed to Mills and his successors in title as private property, and that the taxes thus levied thereon have been paid by Mills and his successors in title.

The court found that Mills erected a fence around his property, including the lots in suit, in 1874; but there is no evidence in the record to sustain that finding. It does appear, however, that the executor of Mills conveyed the property to one Walker, the plaintiff's grantor, on the 7th day of October, 1887, and that there was then a fence around the premises, and that in the month of September, that year, he commenced the erection of a two-family flat house on each of the lots in question, covering the entire frontage of the premises to the street line, and thus occupying all that part of the premises now in question, and finished the erection thereof within 6 months, and that those buildings still stand upon the premises, and that his occupancy and ownership thereof, and the plaintiff's, under a deed from him obtained on the 12th day of July, 1888, have not been questioned. This action was commenced on the 3d day of December, 1906, which was within 20 years after the erection of the buildings; but it was not tried until the 16th day of January, 1908, which was more than 20 years after such erection. Plaintiff's predecessor in title paid an assessment levied on these lots in 1869 for opening Madison avenue, and subsequently paid a like assessment thereon for opening 114th street.

The possibility of the successful assertion of a claim by the city to any title or interest in these premises now is not sufficient to render the title unmarketable. The road having been abandoned and closed as a highway for more than 50 years, it is most improbable that any right or title can now be successfully maintained either by the city, or by the heirs of Poillon, or by others, either on the theory of title or a right to easements which have not been exercised during this entire period of time. There is no finding, however, of the essential facts to show adverse possession, and a new trial is necessary, upon which, doubtless, the facts with respect to inclosing the premises and the occupancy thereof under a claim of right in the plaintiff and his grantors may be more fully and satisfactorily presented.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur